1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  ORI KATZ, Cal. Bar No. 209561
   MICHAEL M. LAUTER Cal. Bar No. 246048
4  TIMOTHY C. PERRY, Cal. Bar No. 248543
   Four Embarcadero Center, 17th Floor
5  San Francisco, California  94111-4106
   Telephone:    415-434-9100
6  Facsimile:    415-434-3947

7  Attorneys for ARRIVA PHARMACEUTICALS, INC.

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   (SAN FRANCISCO DIVISION)

11        On Appeal from the United States Bankruptcy Court
                for the Northern District of California
12                   Hon. Edward D. Jellen

13  ALPHAMED PHARMACEUTICALS          No. 08-01279-SI
    CORP.,
14                                     **NOTICE OF MOTION AND MOTION
                    Claimant-Appellant,  TO DISMISS AS MOOT THE APPEAL
15                                       OF ALPHAMED PHARMACEUTICALS
    v.                                   CORP. OF THE PLAN
16                                       CONFIRMATION ORDER AND
    ARRIVA PHARMACEUTICALS, INC.,        MEMORANDUM OF POINTS AND
17                                       AUTHORITIES IN SUPPORT
                    Reorganized Debtor-  THEREOF**
18                  Appellee.
                                       Date: May 23, 2008
19                                     Time: 9:00 a.m.
                                       Location: Courtroom 10, 19th Floor
20                                               450 Golden Gate Ave.
                                                 San Francisco, CA 94102
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF FACTS ...................................................................2

      A.   The Parties to this Appeal ........................................................2

      B.   The History of Litigation against Arriva ...................................3

            1.    The Arizona Litigation..................................................3

            2.    Litigation in the Northern District of California.............4

            3.    The Florida Litigation ..................................................5

            4.    The Nevada Litigation ..................................................5

            5.    Arriva's Bankruptcy Filing............................................5

            6.    The AlphaMed Adversary Action...................................6

            7.    Arriva's Plan of Reorganization ...................................6

      C.   Arriva's Plan of Reorganization Becomes Effective....................7

      D.   This Appeal ..............................................................................10

III.  ARGUMENT .....................................................................................10

      A.   The Mootness Doctrine Is Very Broad in the Context of Bankruptcy ..........10

            1.    The Rule of Equitable Mootness .....................................10

            2.    The Rule of Constitutional Mootness ..............................13

      B.   The AlphaMed Appeal Is Equitably Moot....................................13

            1.    AlphaMed Failed to Obtain a Stay of the Plan Confirmation Order ................14

            2.    The Plan Has Been Substantially Consummated.............15

            3.    The AlphaMed Appeal Is Equitably Moot .......................16

      C.   The AlphaMed Appeal Is Constitutionally Moot ........................17

IV.   CONCLUSION ..................................................................................19

MOTION TO DISMISS APPEAL AS MOOT

TABLE OF AUTHORITIES

Federal Cases

In re AOV Indus.,
   792 F.2d 1140 (D.C. Cir. 1986).............................................................................10

AlphaMed v. Arriva,
   432 F. Supp. 2d 1355 (S.D. Fla. 2006).....................................................................5

Armster v. United States Dist. Court for Cent. Dist.,
   806 F.2d 1347 (9th Cir. 1986)................................................................................17

In re Baker & Drake, Inc.,
   35 F.2d 1348 (9th Cir. 1994) ..........................................................2, 10, 11, 17

In re Bel Air Assocs.,
   706 F.2d 301 (10th Cir. 1983)................................................................................10

In re Berryman Prods.,
   159 F.3d 941 (5th Cir. 1998).................................................................................10

Central States, Southeast & Southwest Areas Pension Fund v.
   Central Transport, Inc.,
   841 F.2d 92 (4th Cir. 1988)....................................................................................10

In re Charlton,
   708 F.2d 1449 (9th Cir. 1983)...............................................................................17

In re Chateaugay Corp.,
   10 F.3d 944 (2d Cir. 1993).....................................................................................11

In re Chateaugay Corp.,
   94 F.3d 772 (2d Cir. 1996).....................................................................................11

In re Chateaugay Corp.,
   988 F.2d 322 (2d Cir. 1993)...................................................................................12

In re Club Assocs.,
   956 F.2d 1065 (11th Cir. 1992)..............................................................................10

In re Combined Metals Reduction Co.,
   557 F.2d 179 (9th Cir. 1977)......................................................................12, 13, 17

In re Focus Media, Inc.,
   378 F.3d 916 (9th Cir. 2004) ......................................................2, 12, 13, 17

In re Gotcha Int'l L.P.,
   311 B.R. 250 (9th Cir. BAP 2004) ...............................................................11, 15

In re Information Dialogues, Inc.,
   662 F.2d 475 (8th Cir. 1981).................................................................................10

Lewis v. Continental Bank Corp.,
    494 U.S. 472 (1990).............................................................13

Mills v. Green,
    159 U.S. 651 (1895)...........................................................12

Ohio v. Madeline Marie Nursing Homes # 1 & # 2,
    694 F.2d 449 (6th Cir. 1982) .............................................10

In re Onouli-Kona Land Co.,
    846 F.2d 1170 ....................................................................12

In re Popp,
    323 B.R. 260 (9th Cir. BAP 2005) ....................................10

In re Public Serv. Co.,
    963 F.2d 469 (1st Cir. 1992) ..............................................10

In re Roberts Farms, Inc.,
    652 F.2d 793 (9th Cir. 1981) .................... 2, 10, 12, 13, 14, 16

In re UNR Indus.,
    20 F.3d 766 (7th Cir. 1994) ...............................................10

In re United Artists Theatre Co.,
    315 F.3d 217 (3rd Cir. 2003) .............................................10

Federal Statutes

11 U.S.C. § 1101(2) .......................................... 16, 21, 22, 23

Federal Rules of Civil Procedure

Rule 12(b)(6)

Federal Rules of Bankruptcy Procedure

3020(e) .............................................................................14

8005 .............................................................................11, 14

8011(a) .............................................................................1

U.S. Constitution

U.S. Constitution art. III, § 2..........................................2, 12, 17

## NOTICE OF MOTION AND MOTION

Please take notice that pursuant to Fed. R. Bankr. P. 8011(a), Reorganized Debtor-Appellee Arriva Pharmaceuticals Corp. ("Arriva") hereby submits this Motion to Dismiss as Moot the Appeal of AlphaMed Pharmaceuticals Corp. (the "Motion") of the order of the Bankruptcy Court confirming Arriva's plan of reorganization (the "Plan Confirmation Order").[1]

Arriva requests this Court to dismiss the appeal of AlphaMed Pharmaceuticals Corp. ("AlphaMed") as both equitably and constitutionally moot. In support of the Motion, Arriva submits the Declaration of Philip J. Barr (the "Barr Declaration") and the Declaration of M. Sue Preston (the "Preston Declaration"). Arriva has attached to each of these declarations various exhibits, each of which is either drawn from the record on appeal or supports a pertinent fact that has occurred since the filing of the notice of appeal.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

AlphaMed appeals a final order of the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") confirming Arriva's Fourth Amended Plan of Reorganization (the "Plan"). Following intensive bankruptcy proceedings, the Plan received 100% approval from the voting creditors. Then, after the Bankruptcy Court issued the Plan Confirmation Order, Arriva duly "closed" the Plan and the "Effective Date" of the Plan took place for the benefit of all creditors. Yet on appeal, AlphaMed asks this Court for extraordinary relief. Namely, AlphaMed asks this Court to overturn the Plan Confirmation Order, reversing millions of dollars of transfers of funds that took place on the Effective Date of the Plan.

---

[1] This Court currently has five open associated cases before it: *In re Arriva Pharmaceuticals Inc.*, 08-00691-SI; *Protease Science, Inc. v. Arriva Pharmaceuticals, Inc.*, 08-00692-SI; *Sonoran Desert Chemicals, LLC v. Arriva Pharmaceuticals, Inc.*, 08-00693-SI; *AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 08-00825-SI; and *AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 08-01279-SI. We file the Motion in the latter case only. We assume this Court will set a briefing schedule for the others.

1    AlphaMed cannot, however, obtain this extraordinary relief for a simple reason:

2    AlphaMed's appeal is moot.  As a result, this Court cannot hear AlphaMed's arguments on

3    the merits, and should dismiss the appeal.

4    Two separate and independent mootness doctrines require dismissal.  First,

5    AlphaMed's appeal is equitably moot.  Remarkably, AlphaMed failed to ask for a stay of

6    the Plan Confirmation Order from the Bankruptcy Court, this Court, the Ninth Circuit, or

7    the Circuit's Supreme Court Justice.  In failing to do this, AlphaMed "neglected diligently

8    to pursue [its] available remedies to obtain a stay of the objectionable orders of the

9    Bankruptcy Court," *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981).  As a

10   result of this neglect—which the Ninth Circuit has called "procedural ineptitude," *id.* at

11   795—Arriva has implemented the Plan and "gone effective" as a newly reorganized

12   company.  Because the parties to the bankruptcy have substantially consummated the Plan,

13   it would be inequitable for this Court to consider AlphaMed's appeal on the merits.  *Id.*

14   Second, AlphaMed's appeal is constitutionally moot.  The parties to this bankruptcy have

15   substantially consummated the Plan, setting in motion a complicated set of changes in

16   Arriva's relationships to creditors, corporate officers, shareholders and third party vendors.

17   As a result, this Court is "powerless to undo what has already been done," and Article III

18   demands that this Court dismiss the appeal.  *In re Focus Media, Inc.*, 378 F.3d 916, 922

19   (9th Cir. 2004) (internal quotation marks omitted); U.S. Const. art. III, § 2

20   Put simply, as a result of AlphaMed's failure to obtain a stay, the eggs of this

21   bankruptcy case have been scrambled.  This Court should not—indeed, cannot—now order

22   the bankruptcy court to "unscramble the eggs." *In re Baker & Drake, Inc.*, 35 F.3d 1384,

23   1351 (9th Cir. 1994).  Instead, this Court should dismiss AlphaMed's appeal as equitably

24   and constitutionally moot.

## II.    STATEMENT OF FACTS

### A.    The Parties to this Appeal

27   Debtor-Appellee Arriva is a privately held biopharmaceutical company located in

28   Alameda, California.  Founded in 1997, Arriva seeks to develop protease inhibitors for

-2-

1  treatment of fatal respiratory diseases such as hereditary emphysema, chronic obstructive

2  pulmonary disease and asthma.  Among other things, Arriva holds the license rights to

3  certain patents (the "Protease License"). (Exhibits A and B to the Barr Declaration.)

4        Claimant-Appellant AlphaMed is a Florida corporation founded in 1999 by John

5  Lezdey and his sons Darren Lezdey and Jarett Lezdey (collectively, the "Lezdeys").

6  Ostensibly launched as a competitor to Arriva, AlphaMed has often served as a vehicle for

7  the Lezdeys' harassing litigation.

8  **B.**      **The History of Litigation against Arriva**

9        This bankruptcy appeal represents the latest episode in the long-running saga of the

10  Lezdeys' and AlphaMed's harassing actions and litigation against Arriva.  Indeed, Arriva

11  filed for bankruptcy protection principally because of the difficulty in raising funds while

12  defending lawsuits against the Lezdeys and AlphaMed and the uncertainty of future

13  litigation.  We therefore briefly review that history of litigation, beginning with the

14  "Arizona Litigation" in 1999.

15        **1.**      **The Arizona Litigation**

16        In 1999, one of the founders of Arriva, Dr. Allan Wachter filed suit in Arizona state

17  court against the Lezdeys, Protease Sciences, Inc. ("PSI") and other defendants,[2] seeking a

18  declaration that the Lezdeys held no valid interest in the Protease License.  Dr. Wachter

19  filed this suit after it was discovered John Lezdey had fraudulently licensed patents subject

20  to the Protease License to AlphaMed. (Exhibit C to the Barr Declaration.)

21        On February 3, 2000, the Arizona Court ruled in Dr. Wacher's favor, finding PSI

22  held no valid interest in the Protease License.  (Exhibit C to the Barr Declaration.)  The

23  Arizona Court entered a final judgment against those Lezdey defendants who were not in

24  bankruptcy as of that time, namely Darren and Jarett Lezdey (the two Lezdey sons), and JL

25  Technology.  In so doing, the Arizona Court permanently enjoined all of the Lezdeys from

26

27  [2]     Dr. Wachter named the following defendants: John Lezdey, Doreen Lezdey, Darren Lezdey, Jarret Lezdey, J&D Science, Inc., J.L. Technology, LP, Sonoran Desert Chemicals LLC, Protease Sciences, Inc., John Does 1 through 100.

28

      MOTION TO DISMISS APPEAL AS MOOT

1   "acting or speaking, or purporting to act or speak, on behalf of [PSI] or [Sonoran] without

2   [Dr. Wachter's] express written consent." (Exhibit D to the Barr Declaration, ¶ III.)  In

3   addition, the Arizona Court awarded a money judgment in favor of Dr. Wachter and

4   Wachter plaintiff parties to the Arizona litigation (the "Wachter Judgment") (Exhibit F to

5   the Barr Declaration).

6          After the entry of the Permanent Injunction, the Arizona Court entered an "Under

7   Advisement Ruling" against John Lezdey.  In that Ruling, the court noted, among other

8   things, that John Lezdey had failed to pay court fines, failed to cure contempt citations and

9   had taken many actions that constituted a violation of the preliminary injunction.  Such

10  actions included speaking for Sonoran in a patent interference proceeding in the Patent and

11  Trademark Office, appearing in a European Court of Patent Appeals without Dr. Wachter's

12  consent, and contacting a group of Arriva investors without Wachter's consent.  The

13  Ruling ordered John Lezdey to surrender himself to the Maricopa County Sheriff's Office

14  for incarceration.  (Exhibit G to the Barr Declaration.)

15         **2.      Litigation in the Northern District of California**

16         Also in 1999, Arriva filed suit in the United States District Court for the Northern

17  District of California, case no. 99-012169-SI, seeking a declaration that it held the only

18  valid interest in the Protease License.  The case was held in abeyance while the Arizona

19  Litigation continued.  After Arriva obtained favorable orders in the Arizona Litigation,

20  Arriva moved to dismiss the California Litigation, including the Lezdeys' counterclaims

21  against Arriva.  On July 5, 2006, citing the Arizona proceedings, United States District

22  Judge Illston dismissed the parties' claims.  Among other considerations, District Judge

23  Illston relied on principles of federalism and comity, holding that the *Brillhart* doctrine

24  prevented her from adjudicating the dispute.  (Ex H to the Barr Declaration, 7 et seq.)  An

25  Arizona Superior Court, District Judge Illston noted, already had considered the issues

26  raised in the Arriva Declaratory Relief Case.  (Id.)  As District Judge Illston held, "comity

27  between this Court and the Arizona Superior Court warrants denial of jurisdiction."  (Id. at

28  7:27-28.)  Further:

-4-

> The Court concludes that the [Protease License] issue has already been extensively litigated in the Arizona court, and that any litigation in this court would be duplicative. The license's validity was a specific finding in the court's final judgment and permanent injunction against Lezdey's sons and J.L. Technology and in its preliminary injunction order against Lezdey.

(Id. at 8:12-15.)  District Judge Illston continued on to note "after obtaining several adverse rulings in Arizona, defendants [Lezdeys] seek a more favorable forum. The Ninth Circuit has discouraged such opportunistic maneuvering." (Id. at 11:24-25.)

### 3.    The Florida Litigation

In 2003, AlphaMed filed suit against Arriva in the United States District Court for the Southern District of Florida sitting in diversity. In 2005, the lawsuit proceeded to trial on three claims: misappropriation of trade secrets, tortious interference with business and unfair competition. In 2006, the jury returned a verdict against Arriva in the amount of $78 million. Despite the jury's verdict, the Court entered judgment as a matter of law in favor of Arriva, holding that the Lezdeys should take nothing from Arriva and that Arriva should recover costs from AlphaMed. *See AlphaMed v. Arriva*, 432 F. Supp. 2d 1355 (S.D. Fla. 2006). (Exhibit I to the Barr Declaration.) AlphaMed has appealed that judgment. Although the parties fully briefed that appeal, the Eleventh Circuit has not yet ruled on the matter.

### 4.    The Nevada Litigation

On June 14, 2007, John Lezdey, J.L. Technology and Jamie Holdings, LLC, filed a suit in Nevada state court, seeking a declaration that Arriva's Protease License was invalid. (Exhibit J to the Barr Declaration.) The Lezdeys sought such a declaration in the Nevada Complaint for the same reasons they advanced in Arizona State Court and in the United States District Court for the Northern District of California. The Nevada case has been automatically stayed due to Arriva's bankruptcy case.

### 5.    Arriva's Bankruptcy Filing

On August 29, 2007, Arriva filed its Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California. That case, which

-5-

MOTION TO DISMISS APPEAL AS MOOT

1  underlies this appeal, is docketed in the Bankruptcy Court at no. 07-42767.  On the same

2  day as it filed for bankruptcy, Arriva submitted its first Chapter 11 Plan of Reorganization.

3  Over the ensuing few months until debtor-in-possession funding was absolutely critical in

4  October, 2007, Arriva engaged in negotiations with six potential investors over the terms

5  of the Plan.  As negotiations over the Plan continued, Arriva defended against claims filed

6  by various purported creditors, including AlphaMed.  In the end, the Hon. Edward D.

7  Jellen (the "Bankruptcy Judge") disallowed the claims of AlphaMed, while designating

8  John Lezdey's vote as having been cast in bad faith.  (Exhibits K and N to the Barr

9  Declaration.)

10    **6.    The AlphaMed Adversary Action**

11        On October 30, 2007, during Arriva's bankruptcy proceedings, AlphaMed filed an

12  adversary complaint against Arriva in the Bankruptcy Court, case no. 07-4181, seeking a

13  declaration that the Protease License did not belong to Arriva.  Arriva promptly filed a

14  motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The Bankruptcy Court then

15  dismissed the complaint with prejudice.  (Exhibit L to the Barr Declaration.)  In dismissing

16  the complaint, the Bankruptcy Court relied on substantially the same reasons as did United

17  States District Judge Illston when she dismissed the similar lawsuit in 1999.  Specifically,

18  the United States Bankruptcy Judge Edward E. Jellen relied on principles of federalism

19  and comity, noting that the *Rooker-Feldman* doctrine prohibited him from directly

20  reviewing issues already adjudicated by the Arizona Superior Court.  (Ex M to the Barr

21  Declaration, 10:3-14 & 11:14-20.)  In addition, Bankruptcy Judge Jellen held AlphaMed

22  had failed sufficiently to plead standing to maintain its adversary action.  (Id.)

23    **7.    Arriva's Plan of Reorganization**

24        On January 16 and 17, 2008, the Bankruptcy Court held a full trial on plan

25  confirmation, during which attorneys for Arriva and AlphaMed examined two witnesses.

26

27

28

1   The Plan[3] received 100% approval from the voting creditors—a resounding affirmation of

2   Arriva's promise as a newly reorganized business.

3       Then, on January 30, 2008, the Bankruptcy Court entered the Plan Confirmation

4   Order, confirming the Plan.  (Exhibit C to the Preston Declaration.)  On February 7, 2008,

5   AlphaMed appealed the Plan Confirmation Order.  However, despite its decision to appeal

6   the Plan Confirmation Order, AlphaMed—remarkably—neither sought, nor obtained, a

7   stay of the Plan Confirmation Order from any court.  Because the Bankruptcy Court issued

8   no such stay, Arriva 's principals duly implemented the Plan, causing the newly

9   reorganized Arriva to "go effective."  Thus, on February 13, 2008, Arriva formally

10  emerged from bankruptcy as a reorganized company.

11  **C.    Arriva's Plan of Reorganization Becomes Effective**

12      In this bankruptcy case, the Effective Date represents the date on which Arriva

13  completed the steps necessary to become a newly reorganized company.  In the underlying

14  bankruptcy case, the "closing" on the Effective Date of the Plan represented the

15  culmination of months of intensive negotiations between the Arriva, its creditors, various

16  lenders and other parties in interest.  The provisions of the Plan reach far and wide,

17  impacting hundreds of parties, from Arriva's own Board of Directors and other insiders to

18  scores of third party vendors and stockholders who otherwise had little involvement with

19  the bankruptcy proceeding.  Specifically, on February 13th, 2008, Arriva took the

20  following actions:

21      1.    Drew down on its $6 million line of credit provided by its lenders, Nordic

22          and MPM[4] (Exhibits D and E to the Preston Declaration);

---

[3]   A copy of the Plan is attached as Exhibit A to the Preston Declaration.  A copy of
the Disclosure Statement for the Plan is attached as Exhibit B to the Preston
Declaration.

[4]   "Nordic" consists of Nordic Biotech Venture Fund II K/S.  "MPM" consists of
MPM Bioventures II-QP, L.P.; MPM Bioventures II L.P.; MPM Asset Management
Investors II 2002 BVII LLC; and MPM Bioventures GMBH & Co.
Parellelbeteiligungs KG.

2.    Paid to Nordic and MPM loan principal in the amount of $1.5 million, as well as $41,333.36 of accrued loan interest (Exhibits D and E to the Preston Declaration);

3.    Filed with the California Secretary of State new Articles of Incorporation and adopted new bylaws (Exhibit F to the Preston Declaration);

4.    Created a new investors' rights agreement with an eye to making an initial public offering (Exhibit G to the Preston Declaration);

5.    Rescinded more than 100,000 shares of old common stock, owned by 18 different shareholders (Exhibit A to the Preston Declaration, ¶¶ 4.4-4.8);

6.    Issued 400,000 shares of new common stock to five separate entities comprising Nordic and MPM.  MPM and Nordic, as holders of stock, are now free, subject to certain restrictions, to convey portions of those shares to any number of third parties (Exhibits H and I to the Preston Declaration);

7.    Rescinded more than 5 million shares of old preferred stock, owned by 65 different individuals and entities (Ex A to the Preston Declaration, ¶¶4.4-4.8);

8.    Issued 1,500 shares of new Series A preferred stock to five separate entities (Exhibits H and I to the Preston Declaration);

10.   Secured settlement with twelve companies and individuals, who effectively withdrew their claims filed in the Bankruptcy Court—worth more than $31.8 million (documentation of settlements for which Arriva attained court approval are attached as Exhibits J and P to the Preston Declaration);

11.   Assumed a contract with QSV Biologics, binding both Arriva and QSV Biologics to continue their reciprocal performance of a contract in which QSV manufactures and provides clinical rAAT to Arriva (Exhibit A to the Preston Declaration, ¶ 8.1 and Schedule G);

12.   In connection with the assumption of the contract with QSV Biologics, paid a cure amount exceeding $273,000, and since confirmation has gone on to

-8-

MOTION TO DISMISS APPEAL AS MOOT

1    pay more than $648,000, and has been recently invoiced more than $121,500

2    for services rendered (Exhibit K to the Preston Declaration);

3    13.    Assumed forty executory contracts Arriva had entered into before filing for

4    bankruptcy, as enumerated in "Schedule G" submitted to the bankruptcy

5    court (Exhibit A to the Preston Declaration, § 8.1 and Schedule G).  By

6    assuming the contracts, Arriva bound itself and those companies to continue

7    their reciprocal performance just as they had done before Arriva filed for

8    bankruptcy;

9    14.    Paid more than $75,000 to Hefferman Insurance Brokers for its director's and

10    officer's insurance (Exhibit L to the Preston Declaration);

11    15.    Funded a pot in the amount of $776,000 from which creditors eventually will

12    recover their claims (Exhibit M to the Preston Declaration);

13    16.    Commenced distribution of funds from this pot to creditors (Exhibit N to the

14    Preston Declaration);

15    17.    Continued to expend funds as part of its monthly operating budget as a

16    newly reorganized company.  For example, in February, Arriva planned to

17    spend approximately $170,100 on non-bankruptcy-related costs.  In March,

18    Arriva plans to spend approximately $766,610 on such costs; and Arriva

19    plans to spend approximately $332,000 in April; and approximately

20    $237,000 in May (Exhibits E and O to the Preston Declaration);

21    18.    Received by assignment from Dr. Wachter his interest in the Wachter

22    Judgment.  That judgment, initially worth $17 million, has now become an

23    asset of Arriva as a newly reorganized company (Exhibit P to the Preston

24    Declaration); and

25    19.    In connection with all the above activities, sent notice to more than 200

26    entities and individuals of Arriva's new status as a reorganized company

27    (Exhibit Q to the Preston Declaration).

28

W02-WEST:5TIP1\400702988.2                                    MOTION TO DISMISS APPEAL AS MOOT

1    Finally, Nordic created a corporate entity in the Netherlands, named Arriva

2  Pharmaceuticals, B.V., to support the funding of the reorganized Debtor.

3  **D.    This Appeal**

4    AlphaMed neglected to seek a stay of the Plan Confirmation Order.  Instead, on

5  February 7, 2008, AlphaMed filed a notice of appeal to the Ninth Circuit Bankruptcy

6  Appellate Panel (the "BAP"), depriving the Bankruptcy Court of the power to issue a stay

7  in the first instance.  On February 8, 2008, Arriva filed a Statement of Election,

8  transferring the appeal to this Court.  On March 28, 2008, this case was associated before

9  United States District Judge Illston.  Arriva now moves to dismiss AlphaMed's appeal as

10  equitably and constitutionally moot.

11                          **III.    ARGUMENT**

12  **A.    The Mootness Doctrine Is Very Broad in the Context of Bankruptcy**

13    In the bankruptcy context, mootness doctrine is extremely broad.  Two separate

14  theories of mootness support dismissal of this appeal: equitable mootness and

15  constitutional mootness.

16          **1.    The Rule of Equitable Mootness**

17    In the Ninth Circuit, under the well-established rule of *In re Roberts Farms, Inc.*,

18  652 F.2d 793, (9th Cir. 1981), a bankruptcy appeal becomes "equitably moot" where

19  appellants (1) "neglect[] diligently to pursue their available remedies to obtain a stay of the

20  objectionable orders of the Bankruptcy Court" thus causing (2) "a comprehensive change

21  of circumstances to occur as to render it inequitable" for the appellate court to consider the

22  merits."  *Id.* at 798; *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1351 (9th Cir. 1994); *In re*

23  *Popp*, 323 B.R. 260, 271 (9th Cir. BAP 2005).  If it is inequitable to consider the merits,

24  then a court must dismiss the appeal as moot.[5]

25

---

26  [5]    *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981), has been cited with
        approval by every other Circuit other than the Federal Circuit (which does not
27      consider bankruptcy appeals).  *See In re Public Serv. Co.*, 963 F.2d 469, 472 (1st
        Cir. 1992); *In re Chateaugay Corp.*, 10 F.3d 944, 953 (2d Cir. 1993); *In re United*
28      *Artists Theatre Co.*, 315 F.3d 217, 228 (3rd Cir. 2003); *Central States, Southeast &*

1    The Ninth Circuit takes an especially dim view of appellants who "flunk[] the first

2 step" of diligently pursuing available remedies and seeking a stay. *In re Roberts Farms,*

3 *Inc.,* 652 F.2d. at 798. Indeed, the Ninth Circuit has deemed the failure to obtain a stay

4 "procedural ineptitude," *id.* at 795, meriting rapid dispatch from the appellate forum. As

5 far back as 1980, the Ninth Circuit made it "obligatory," *id.* at 798, to seek a stay from the

6 bankruptcy court, the District Court, the Ninth Circuit *and* the Circuit's Supreme Court

7 Justice before the district court can begin to consider the unstayed appeal. *Id.* at 798

8 (holding that an appellant must seek a stay "even to the extent of applying to the Circuit

9 Justice for relief"). Indeed, if "an appellant fails to obtain a stay after exhausting all

10 appropriate remedies, that well may be the end of his appeal." *Id.* In 1994, the Ninth

11 Circuit spoke more directly: "Failure to obtain a stay, standing alone, is often fatal." *In re*

12 *Baker & Drake, Inc.,* 35 F.2d 1348, 1352 (9th Cir. 1994). Congress concurs with this

13 judicial assessment; under Fed. R. Bankr. P. 8005, a "motion for a stay of the judgment,

14 order, or decree of a bankruptcy judge . . . must ordinarily be presented to the bankruptcy

15 judge in the first instance."

16    If an appellant has failed to obtain a stay, courts then consider whether there has

17 been a "comprehensive change of circumstances." A "comprehensive change of

18 circumstances" occurs where the parties have brought a plan to "substantial

19 consummation." *In re Gotcha Int'l L.P.,* 311 B.R. 250, 254 (BAP 9th Cir. 2004); *Baker v.*

20 *Drake, Inc. v. Public Serv. Comm'n,* 35 F.3d 1348, 1351 (9th Cir. 1994) Substantial

21 consummation, in turn, depends on a fact-intensive inquiry circumscribed by three

22 statutory factors. The Bankruptcy Code defines substantial consummation as:

23        (A) a transfer of all or substantially all of the property proposed
         by the plan to be transferred;

24

25 *Southwest Areas Pension Fund v. Central Transport, Inc.,* 841 F.2d 92, 96 (4th Cir. 1988); *In re Berryman Prods.,* 159 F.3d 941, 944 n.8 (5th Cir. 1998); *Ohio v.*

26 *Madeline Marie Nursing Homes # 1 & # 2,* 694 F.2d 449, 462-63 (6th Cir. 1982); *In re UNR Indus.,* 20 F.3d 766, 769 (7th Cir. 1994); *In re Information Dialogues, Inc.,*

27 662 F.2d 475, 477 (8th Cir. 1981); *In re Bel Air Assocs.,* 706 F.2d 301, 305, n.10 (10th Cir. 1983); *In re Club Assocs.,* 956 F.2d 1065, 1068 n.10 (11th Cir. 1992); *In*

28 *re AOV Indus.,* 792 F.2d 1140, 1148 (D.C. Cir. 1986)

W02-WEST:5TIP1\400702988.2                                    MOTION TO DISMISS APPEAL AS MOOT

> (B) an assumption by the debtor . . . under the plan of the business or management of all or substantially all of the property dealt with by the plan; and
> (C) commencement or distribution under the plan.

11 U.S.C. § 1101(2). A comprehensive change in circumstances gives rise to a *presumption* of mootness. *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir. 1993) (*Chateaugay II*); *In re Chateaugay Corp.*, 94 F.3d. 772, 776 (2d Cir. 1996) ("*Chateaugay III*") ("Reviewing courts presume that it will be inequitable or impractical to grant relief after substantial consummation of a plan or reorganization."). In response, the appellant can rebut that presumption *only* by showing that *each one of* five factors[6] inhere. *Id*. at 952-53. To date, the Ninth Circuit has not explicitly adopted this presumption of mootness. However, when the Second Circuit explained the presumption of mootness, it relied primarily on Supreme Court and Ninth Circuit precedent. *Id* (citing *Church of Scientology v. United States*, 506 U.S. 9 (1992) and *In re Roberts Farms, Inc.*, 652 F.2d at 793). Therefore, Ninth Circuit case law already embodies the presumption of mootness, and this Court should apply the presumption in this case as well.

This doctrine of equitable mootness is not legal trivia. The doctrine is centrally important to context of bankruptcy, "where the ability to achieve finality is essential to the fashioning of effective remedies." *Chateaugay I*, 988 F.2d at 325. After all, "completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed." *Id*. at 326; *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1172 (explaining the "policy of finality" in bankruptcy).

---

[6] Those factors are: "(a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." *Chateaugay II*, 10 F.3d at 953 (internal citations and quotation marks omitted).

MOTION TO DISMISS APPEAL AS MOOT

1          **2.      The Rule of Constitutional Mootness**

2          A bankruptcy appeal becomes constitutionally moot where the appellate court can

3    no longer fashion effective relief. *In re Focus Media, Inc.*, 378 F.3d 916, 922 (9th Cir.

4    2004). "The duty of an Article III court is to decide live controversies, 'not to give

5    opinions upon moot questions or abstract propositions, or to declare principles or rules of

6    law which cannot affect the matter in issue in the case before it.'" *In re Chateaugay Corp.*,

7    988 F.2d 322, 325 (2d Cir. 1993) ("*Chateaugay I*") (*citing Mills v. Green*, 159 U.S. 651,

8    653 (1895); *In re Combined Metals Reduction Co.*, 557 F.2d 179, 187 (9th Cir. 1977)

9    (Courts may only "decide actual controversies by a judgment which can be carried into

10   effect."); U.S. Const. art. III, § 2 (delimiting Article III courts' jurisdiction to actual "cases"

11   and "controversies"). As a result, when an "event occurs which renders it impossible . . . to

12   grant . . . any effectual relief whatever, the court will not proceed to a formal judgment, but

13   will dismiss the appeal as moot." *In re Combined Metals Reduction Co.*, 557 F.2d at 187;

14   *Chateaugay I*, 988 F.2d at 325; *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472,

15   477-78 (1990).

16         In the bankruptcy context, such an "event" foreclosing effective relief occurs readily

17   when a reorganized debtor sets its plan in motion. This is because a plan of reorganization

18   widely redistributes property. Thus, "[f]or example, when a trustee has already sold assets

19   to third parties, a court may be powerless 'to undo what has already been done.'" *In re*

20   *Focus Media, Inc.*, 378 F.3d at 923 (quoting *In re Combined Metals Reduction Co.*, 557

21   F.2d at 187); *Baker v. Drake, Inc. v. Public Serv. Comm'n*, 35 F.3d 1348, 1351 (9th Cir.

22   1994) (noting that transfer of property "to a third party precludes meaningful relief").

23   These constitutional "principles are especially pertinent in bankruptcy proceedings, where

24   the ability to achieve finality is essential to the fashioning of effective relief." *Chateaugay*

25   *I*, 988 F.2d at 325.

26   **B.      The AlphaMed Appeal Is Equitably Moot**

27         AlphaMed has failed to seek a stay, thus permitting the Plan to become effective.

28   This, in turn, has resulted in a comprehensive change of circumstances such that it would

MOTION TO DISMISS APPEAL AS MOOT

1  be inequitable for this Court to consider the AlphaMed appeal on the merits.  Accordingly,

2  this Court must dismiss AlphaMed's appeal as equitably moot.

3        **1.     AlphaMed Failed to Obtain a Stay of the Plan Confirmation Order**

4          To begin with, AlphaMed has "neglected diligently to pursue their available

5  remedies to obtain a stay of the objectionable orders of the Bankruptcy Court." *In re*

6  *Roberts Farms, Inc.*, 652 F.2d at 798.  AlphaMed's obligation to seek and obtain this stay

7  is no legal technicality or trap for the unwary.  To the contrary, for almost thirty years the

8  Ninth Circuit has frowned upon bankruptcy appellants such as AlphaMed who fail to

9  obtain a stay of the order confirming the plan of reorganization.  Moreover, a stay is

10  "obligatory," *id*. at 798: If an appellant fails to obtain one, "that well may be the end of his

11  appeal," *id.*

12          Here, AlphaMed has failed to obtain a stay.  We ask this Court to consider the

13  practical dimensions of this neglect: In bankruptcy, a party aggrieved by the confirmation

14  of a plan of reorganization need not sit helplessly on the sidelines while the debtor

15  effectuates the Plan.  Here, when the Bankruptcy Judge orally announced the decision to

16  confirm Arriva's plan of reorganization on January 16, 2008, AlphaMed should have orally

17  moved in open court for a stay pending appeal.  The Plan Confirmation Order, like most

18  orders, was not entered that same day, but instead was entered later on January 30, 2008.

19  AlphaMed should have at least asked the Bankruptcy Court for a stay before the Court

20  entered the order.  Even if the Bankruptcy Court denied the stay, AlphaMed still would

21  have had the benefit of an automatic stay that lasted for ten days after entry of the Plan

22  Confirmation Order.  Fed. R. Bankr. P. 3020(e).  That ten-day period is meant to provide

23  parties such as AlphaMed additional time to seek a stay from the District Court, the Ninth

24  Circuit *and* the Circuit's Supreme Court Justice. *In re Roberts Farms, Inc.*, 652 F.2d. at

25  798.  But AlphaMed took advantage of none of these protections.  Instead, AlphaMed

26  remained silent—and then abruptly filed a notice of appeal to the BAP.  Indeed, AlphaMed

27  remained silent "despite the unambiguous directions of Bankruptcy Rule [8005]," and

28  despite nearly three decades of Ninth Circuit case law admonishing bankruptcy appellants

-14-

MOTION TO DISMISS APPEAL AS MOOT

1  to seek a stay in the bankruptcy court. *In re Roberts Farms, Inc.*, 652 F.2d at 796; *see* Fed

2  R. Bankr. 8005 ("A motion for a stay of the judgment, order or decree . . . must ordinarily

3  be presented to the bankruptcy judge in the first instance.").

4       In the absence of a stay, Arriva duly brought the Plan effective. By permitting

5  Arriva to bring the Plan effective while it silently harbored an objection, AlphaMed

6  "neglected diligently to pursue [its] available remedies." In this way, AlphaMed's conduct

7  satisfies the first factor of *In re Roberts Farms, Inc.*, 652 F.2d at 798.

8       **2.    The Plan Has Been Substantially Consummated**

9       AlphaMed's failure to obtain a stay is not harmless. To the contrary, it has resulted

10  in a "comprehensive change of circumstances" insofar as Arriva has brought the Plan to

11  "substantial consummation." *In re Gotcha Int'l L.P.*, 311 B.R. 250, 254 (BAP 9th Cir.

12  2004). The Bankruptcy Code defines substantial consummation as:

> (A) a transfer of all or substantially all of the property proposed
>       by the plan to be transferred;
> (B) an assumption by the debtor . . . under the plan of the
>       business or management of all or substantially all of the
>       property dealt with by the plan; and
> (C) commencement or distribution under the plan.

13

14

15

16  11 U.S.C. § 1101(2).

17

18       Here, Arriva has transferred "substantially all of the property proposed by the [P]lan

19  to be transferred." 11 U.S.C. § 1101(2)(A). As enumerated in section II.C, *supra*, Arriva

20  has drawn down $6 million in loan funds, while repaying more than $1.5 million in

21  principal and loan interest. Arriva cancelled all its old stock and issued more than 400,000

22  shares of new common stock and series A preferred stock to dozens of entities and

23  individuals, each of which is now free to convey those shares of stock to third parties.

24  Arriva has assumed forty significant executory contracts, thus committing itself and

25  numerous innocent third parties to future performance under those contracts ever since the

26  Effective Date.

27

28

-15-

MOTION TO DISMISS APPEAL AS MOOT

1    Arriva also has received, by assignment, the Wachter Judgment, in the face amount

2  of $17 million.  Meanwhile, Arriva has continued to expend hundreds of thousands of

3  dollars per month as part of its operating budget as a newly reorganized company.

4    Further, Arriva has assumed "the business or management of all or substantially all

5  of the property dealt with by the [P]lan."  11 U.S.C. § 1101(2)(B).  Specifically, on

6  February 13, 2008, Arriva installed its new Board of Directors and filed with the Secretary

7  of State of California its amended articles of incorporation.  In addition, Arriva created an

8  investors' rights agreement with an eye to making an initial public offering.  As described

9  above, Arriva has issued hundreds of thousands of new shares of stock to a number of

10  individuals and entities, thus transferring shareholder ownership of Arriva to a new set of

11  individuals and entities.  Indeed, Nordic created a corporate entity in the Netherlands,

12  named Arriva Pharmaceuticals, B.V., to support the funding of the reorganized Debtor.

13  Finally, in connection with these activities, Arriva has issued notice to more than 200

14  individuals and entities of Arriva's new status as a newly reorganized company.

15    Finally, Arriva's distribution under the Plan has commenced.  11 U.S.C. §

16  1101(2)(C).  Specifically, on February 13, 2008, Arriva funded a large pot—in the amount

17  of $776,000—from which creditors eventually will recover their claims.  As part of its

18  duties under the Plan, Arriva duly has begun to distribute sums from this pot to creditors.

19    In this way, Arriva has substantially consummated this plan, causing "a

20  comprehensive change of circumstances," rendering it inequitable for this Court to

21  consider the merits.  *In re Roberts Farms, Inc.*, 652 F.2d at 798.  As a result, the second

22  factor of *In re Roberts Farms, Inc.*, 652 F.2d at 798, is present.

23    **3.    The AlphaMed Appeal Is Equitably Moot**

24    Because both factors of *In re Roberts Farms, Inc.*, 652 F.2d at 798, are present,

25  there arises a presumption that AlphaMed's appeal is equitably moot.  *Chateaugay III*, 94

26  F.3d. at 776.  Therefore, unless AlphaMed rebuts the presumption using the five factors of

27  *Chateaugay II*, 10 F.3d at 953, this Court must dismiss the appeal as moot.

28

-16-

1    However, even if this Court does not apply the *Chateaugay* presumption of

2  mootness, it still must dismiss AlphaMed's appeal as moot.  Arriva has changed the

3  relationships among a myriad of parties, drawing down on loans, paying debts, committing

4  itself and more than forty innocent third parties to performing under assumed contracts,

5  transferring shares of stock, allowing to be created a corporate counterpart in the

6  Netherlands and inducing widespread reliance by third parties on the integrity of the

7  confirmed Plan.  Each of these entities has relied on the integrity of the Plan, initiating

8  their own downstream dealings on the reasonable assumption Arriva's status as a newly

9  reorganized company will not be undone.  In other words, the eggs of this bankruptcy have

10  been scrambled.  It would be inequitable—indeed, unworkable—for this Court now to

11  order the Bankruptcy Court to unscramble the eggs.

12  **C.    The AlphaMed Appeal Is Constitutionally Moot**

13    The AlphaMed appeal of the unstayed Plan Confirmation Order is constitutionally

14  moot.  On February 13, 2008, Arriva effectuated the Plan, thus consummating a

15  complicated set of transactions among a myriad of parties.  As a result of the

16  consummation of these transactions, for simple, practical reasons, this Court is "powerless

17  'to undo what has already been done.'"  *In re Focus Media, Inc.*, 378 F.3d at 923 (quoting

18  *In re Combined Metals Reduction Co.*, 557 F.2d at 187); *In re Baker & Drake, Inc.*, 35

19  F.3d at 1351; *Armster v. United States Dist. Court for Cent. Dist.*, 806 F.2d 1347, 1354

20  (9th Cir. 1986); *In re Charlton*, 708 F.2d 1449, 1454 (9th Cir. 1983).  Accordingly, U.S.

21  Const. art. III, § 2 demands that this Court dismiss AlphaMed's appeal.

22    To begin with, Arriva's use of the line of credit provided by its lenders makes this

23  appeal moot.  Before the Effective Date of the Plan, Nordic was the agent lender to the

24  Debtor under a Debtor-in-Possession Loan to the Debtor ("DIP Loan").  Prior to the

25  February 13, 2008 Effective Date, Nordic had participated in only a $1.5 million DIP

26  Loan.  At that time, Nordic had no shareholder interest in the Debtor; it was just a lender.

27  But then, in reliance on the unstayed Confirmation Order, Nordic and MPM on the

28  Effective Date advanced another $2.5 million to allow the Plan to become effective.

1   Nordic and MPM also advanced on that date $1.5 million to allow the DIP Loan to be

2   paid. In so doing, Nordic and MPM became more than just lenders. They became equity

3   shareholders of Arriva as a reorganized company. After the Effective Date, Nordic and

4   MPM made further advances on the $6 million loan. Specifically, Nordic and MPM

5   advanced $500,000 to the Reorganized Debtor on February 20, 2008 and advanced another

6   $750,000 on March 19, 2008. Arriva anticipates that by the time this Court hears this

7   Motion on May 23, Nordic and MPM will have advanced, on April 30, 2008, another

8   $750,000 to complete the total of the $6 million financing.

9       Before the Effective Date, MPM was not only the lead shareholder in Arriva, but

10  also enjoyed representation on Arriva's board. MPM participated in the Nordic DIP Loan

11  and indeed, at the beginning of Arriva's bankruptcy, MPM filed substantial proofs of claim

12  totaling millions of dollars. But on the Effective Date, all this changed. MPM

13  relinquished its shareholder interest in Arriva, and dismissed its millions of dollars of

14  claims against the Debtor. MPM additionally gave up its seats on Arriva's board and

15  participated in additional financing to the Reorganized Debtor.

16      Similarly, Arriva has continued its transactions with third party vendors and paid

17  cures in order to assume over forty executory contracts. Pursuant to these contracts, Arriva

18  and more than forty innocent third parties have continued their reciprocal performance,

19  exchanging money for services and goods. In addition, these parties have engaged in their

20  own downstream business dealings—all in reliance on the Plan Confirmation Order. Also,

21  Arriva has issued new shares of stock, begun payment to its creditors and Nordic has

22  created a corporate entity in the Netherlands, Arriva Pharmaceuticals, B.V. Now that

23  Arriva has taken all these steps, they cannot be undone. Indeed, any attempt to do so

24  would not result in "relief" at all, but would merely create an "unmanageable,

25  uncontrollable situation for the Bankruptcy Court." *In re Roberts Farms, Inc.*, 652 F.2d at

26  797. Thus, to the extent reversal would require the return of these funds and an undoing of

27  Arriva's actions over the past few months, this Court cannot fashion effective relief and

28  must dismiss AlphaMed's appeal as constitutionally moot.

1       The result may seem harsh, but it is a product of AlphaMed's own neglect.  In a

2   more typical situation, the bankruptcy appellant would have obtained a stay from the

3   bankruptcy court.  But here, AlphaMed did not even ask for such a stay, and Arriva duly

4   brought its Plan effective for the benefit of all creditors.  As a result, this Court cannot

5   fashion effective relief and the appeal is moot.  Accordingly, U.S. Const. art. III, § 2

6   requires that this Court "not proceed to a formal judgment, but [instead] dismiss the

7   appeal." *In re Combined Metals Reduction Co.*, 557 F.2d at 187.  In other words, the eggs

8   of this bankruptcy have been scrambled, *In re Baker & Drake, Inc.*, 35 F.3d at 1351, and

9   they cannot now be unscrambled.

10      For this reason, too, this Court must dismiss AlphaMed's appeal as moot.

11

12                  **IV.    CONCLUSION**

13      For the reasons stated above, this Court must dismiss with prejudice AlphaMed's

14  appeal as moot.

15

16

17  DATED: April 16, 2008

18                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19

20                  By  _____

21                              TIMOTHY C. PERRY

22                    Attorneys for ARRIVA PHARMACEUTICALS,
                                 INC.

23

24

25

26

27

28

-19-