SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
ORI KATZ, Cal. Bar No. 209561
MICHAEL M. LAUTER, Cal. Bar No. 246048
TIMOTHY C. PERRY, Cal. Bar No. 248543
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:     415-434-3947

Attorneys for ARRIVA PHARMACEUTICALS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Hon. Edward D. Jellen

| | |
|---|---|
| ALPHAMED PHARMACEUTICALS CORP., <br><br> Claimant-Appellant, <br><br> v. <br><br> ARRIVA PHARMACEUTICALS, INC., <br><br> Reorganized Debtor-Appellee. | No. 08-01279-SI <br><br> **REPLY TO ALPHAMED'S OPPOSITION TO MOTION TO DISMISS AS MOOT THE APPEAL OF ALPHAMED PHARMACEUTICALS CORP. OF THE PLAN CONFIRMATION ORDER** <br><br> Date: May 23, 2008 <br> Time: 9:00 a.m. <br> Location: Courtroom 10, 19th Floor <br>            450 Golden Gate Ave. <br>            San Francisco, CA 94102 |

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. REPLY ............................................................................................................................ 2

    A. AlphaMed's Appeal Is Moot ............................................................................... 2

        1. AlphaMed Fails to Excuse Its Failure to Obtain a Stay ......................... 2

        2. AlphaMed Does Not Even Attempt to Rebut the Presumption of Mootness ........................................................................................... 4

        3. AlphaMed Fails to Explain How This Court Can Fashion Effective Relief ....................................................................................... 4

        4. AlphaMed's Own Cases Demonstrate AlphaMed's Appeal Is Moot ........................................................................................................ 8

    B. AlphaMed's Appeal Is Meritless ....................................................................... 10

        1. The Bankruptcy Court Did Not Err in its Classification Rulings ....... 10

        2. The Bankruptcy Court Did Not Commit Clear Error in Making Its Factual Findings on Feasibility .......................................................... 12

            a. Standard of Review ................................................................... 12

            b. The Eleventh Circuit Appeal Will Not Affect Ownership of the Protease License .......................................... 12

            c. The Bankruptcy Court's Finding that the Reserve Protects AlphaMed Is Not Clearly Erroneous .......................... 13

III. CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

AlphaMed Pharms. Corp. v. Arriva Pharms. Inc.,
 432 F. Supp. 2d 1319 (S.D. Fla. 2006) ............................................................. 12

Anderson v. City of Bessemer,
 470 U.S. 564 (1985) ......................................................................................... 12

In re Baker & Drake, Inc.,
 35 F.2d 1348 (9th Cir. 1994) ......................................................................... 3, 9

In re Chateaugay Corp.,
 10 F.3d 944 (2d Cir. 1993) ............................................................................ 1, 4

In re Chateaugay Corp.,
 94 F.3d 772 (2d Cir. 1996) ................................................................................ 4

Matter of Combined Metals Reduction Co.,
 557 F.2d 179 (9th Cir. 1981) ............................................................................. 3

In re Corey,
 892 F.2d 829 (9th Cir. 1989) ........................................................................... 11

In re M. Long Arabians,
 103 B.R. 211 (9th Cir. BAP 1989) .................................................................. 11

In re Miami Trucolor Offset Serv. Co.,
 187 B.R. 767 (Bankr. S.D. Fla. 1995) ............................................................. 11

In re Pizza of Hawaii, Inc.,
 761 F.2d 1374 (9th Cir. 1985) ......................................................................... 12

In re Roberts Farms,
 652 F.2d 793 (9th Cir. 1981) .......................................................... 1-3, 5, 7, 10

Sherman v. Harbin (In re Harbin),
 486 F.3d 510 (9th Cir. 2007) ...................................................................... 14-15

In re Sylmar Plaza, L.P.,
 314 F.3d 1070 (9th Cir. 2002) ........................................................................ 7-8

In re U.S. Truck Co.,
 800 F.2d 581 (6th Cir. 1986) ........................................................................... 10

United States v United States Gypsum Co.,
 333 U.S. 364 (1948) ......................................................................................... 12

Valley National Bank of Arizona v. Trustee,
 609 F.2d 1274 (9th Cir. 1974)] ......................................................................... 2

In Re Weinstein,
 227 B.R. 284 (9th Cir. BAP 1998) .................................................................... 9

DOCKETED CASES

Arriva Pharms., Inc. v. Sonoran Desert Chemicals, LLC,
 (N.D. Calif.) No. 99-02169-SI ............................................................................................... 13

FEDERAL STATUTES

11 U.S.C.
 § 1101(2) ............................................................................................................................... 4
 § 1126(a) ............................................................................................................................. 11

COURT RULES

Federal Rules of Bankruptcy Procedure
 Rule 3018(a) ....................................................................................................................... 11
 Rule 8005 ............................................................................................................................. 3

# I. INTRODUCTION

In its Motion, Arriva submitted extensive evidence demonstrating that it has substantially consummated its Chapter 11 Bankruptcy Plan, causing a comprehensive change of circumstances that renders AlphaMed's appeal equitably and constitutionally moot. Remarkably, AlphaMed brought this result upon itself. Despite clear statutory and decisional authority requiring it to do so, AlphaMed failed to seek a stay of the Plan Confirmation Order. Accordingly, Arriva brought its Plan effective, and has operated for the last three months as a completely reorganized company.

In its Opposition, AlphaMed says very little about the mootness Motion. The first ten pages present a tired rehash of factual assertions that numerous courts have repeatedly rejected as untrue. Those assertions may relate to their attempt to reverse the Bankruptcy Court on the five appeals before this Court, but they do not impact the issue of mootness presently before this Court. The last four pages of the Opposition prematurely argue the merits of AlphaMed's appeal—again, merits that lie outside the scope of the instant mootness Motion.

Yet more than what it says, the Opposition is most defective for what it does not say. The Opposition does not explain why—despite clear decisional and statutory authority—AlphaMed neglected its duty to seek a stay of the Plan Confirmation Order. Nor does the Opposition bother to rebut the presumption of mootness set forth in *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir. 1993) (*Chateaugay II*). Finally, although AlphaMed conclusorily asserts that this Court *can* order effective relief, it fails to explain *how* this Court can do so without merely creating an "unmanageable, uncontrollable situation for the Bankruptcy Court." *In re Roberts Farms*, 652 F.2d 793, 795 (9th Cir. 1981).

Of course, AlphaMed's reticence is really no mystery: AlphaMed has no excuse for failing to seek a stay of the Plan Confirmation Order; AlphaMed cannot rebut the presumption of mootness; and, AlphaMed cannot explain how the Bankruptcy Court could render practicable and effective relief. Accordingly, this Court should dismiss AlphaMed's appeal of the Plan Confirmation Order as equitably and constitutionally moot.

## II. REPLY

In this Reply, Arriva will first demonstrate AlphaMed failed to rebut the presumption that this appeal should be dismissed as moot. Arriva will then demonstrate that the only two issues which AlphaMed raises as a basis for its appeal of its Plan Confirmation Order are just as frivolous as all the other points they have raised.

### A. AlphaMed's Appeal Is Moot

In its Opposition, AlphaMed neglects to excuse its failure to obtain a stay of the Plan Confirmation Order, fails to rebut the presumption of mootness, and fails to show how this Court could grant effective relief. Indeed, AlphaMed's own cases expose their appeal as moot. Accordingly, this Court should dismiss AlphaMed's appeal as moot.

#### 1. *AlphaMed Fails to Excuse Its Failure to Obtain a Stay*

AlphaMed failed to seek a stay of the Plan Confirmation Order. This neglect constitutes "procedural ineptitude," *In re Roberts Farms*, 652 F.2d at 795, for which AlphaMed has absolutely no excuse. Indeed, AlphaMed's ineptitude is particularly egregious here, where it had a month to move for the stay. On January 16, 2008, Judge Jellen announced his decision to confirm Arriva's Plan of Reorganization. Then, not until February 13, 2008 did Arriva bring its Plan effective, emerging from bankruptcy as a reorganized company.

In its frail attempt to explain away its ineptitude, AlphaMed commits errors of both fact and law. For example, AlphaMed argues that *In re Roberts Farms*, 652 F.2d at 793 does not require AlphaMed to seek a stay. This is incorrect. *In re Roberts Farms*, 652 F.2d at 798, holds:

> We think that the thrust of [*Valley National Bank of Arizona v. Trustee*, 609 F.2d 1274 (9th Cir. 1974)] is that it is obligatory upon appellant in a situation like the one with which we are faced to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief . . . ).

AlphaMed cannot escape the imperative of *In re Roberts Farms*. As noted in the Motion, *In re Roberts Farms* represents the seminal case on bankruptcy mootness in the Ninth Circuit,

-2-

and forms the basis for mootness doctrines in practically all sister circuits. In the context of multiparty bankruptcies such as Arriva's, an appellant must seek a stay, or face the consequences. And here, AlphaMed's "procedural ineptitude," *id.* at 795, "well may be the end of [its] appeal." *Id.* at 798; *In re Baker & Drake, Inc.*, 35 F.2d 1348, 1352 (9th Cir. 1994) ("Failure to obtain a stay, standing alone, is often fatal."); Fed. R. Bankr. P. 8005 (A "motion for a stay of the judgment, order, or decree of a bankruptcy judge . . . must ordinarily be presented to the bankruptcy judge in the first instance.").

Besides this, on page 13 of the Opposition, AlphaMed states the *Roberts Farms* court "examined with approval" *Matter of Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir. 1981). According to AlphaMed, this case "declined to dismiss as moot an appeal from an order confirming a plan of reorganization." In fact, while preserving for merits review an issue on appeal from plan confirmation, the *Combined Metals* court dismissed as moot six appeals in their entirety, and an additional two appeals partially. Taking heed of these facts, *Roberts Farms* court cited *Combined Metals* for the proposition that "practical necessities . . . *require*" dismissal of the appeal of the order confirming the plan in that case where a reorganization is not "stayed pending appeal." *In re Roberts Farms*, 652 F.2d at 797 (emphasis added). Thus, *Combined Metals*—a case on which AlphaMed relies—demands immediate dismissal of AlphaMed's appeal of the order confirming Arriva's plan as moot.

One who seeks equity must do equity. Here, AlphaMed has flouted its decisional and statutory obligation to obtain a stay of the Plan Confirmation Order. Under *In re Roberts Farms*, 652 F.2d at 798, an appellant must seek a stay from the Bankruptcy Court, the District Court, the Ninth Circuit and the Circuit Justice. Why did AlphaMed not do so? AlphaMed simply does not say. Certainly AlphaMed cannot plead ignorance; counsel for Arriva informed AlphaMed of the availability of a stay on the record at the Confirmation hearing. (Exhibit C to the Declaration of Michael H. Ahrens [the "Ahrens Declaration"], 16:21-24 & 18:9-12) By no means is AlphaMed's ineptitude harmless: Since Arriva brought its plan effective, numerous parties—including investors, creditors and scores of third parties—have legitimately relied on the integrity of Arriva's reorganization. Now,

-3-

AlphaMed seeks to reverse all of that, boldly asking this Court to repair a debacle of AlphaMed's own inept making. AlphaMed's failure to seek a stay alone requires this Court to dismiss AlphaMed's appeal as moot.

### 2. *AlphaMed Does Not Even Attempt to Rebut the Presumption of Mootness*

In its Motion, Arriva demonstrated it has substantially consummated its plan, causing a comprehensive change in circumstances. This change, in turn, gives rise to a presumption of mootness. *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir. 1993) (*Chateaugay II*); *In re Chateaugay Corp.*, 94 F.3d. 772, 776 (2d Cir. 1996) ("*Chateaugay III*") ("Reviewing courts presume that it will be inequitable or impractical to grant relief after substantial consummation of a plan or reorganization."). AlphaMed can only rebut the *Chateaugay* presumption by making each one of five showings. (Motion, 12 n.5.) AlphaMed does not even attempt to make these showings, and thus fails to rebut the presumption of mootness. On this basis alone, this Court should dismiss AlphaMed's appeal as moot.

AlphaMed notes the Ninth Circuit has not adopted this presumption. In so stating, however, AlphaMed ignores that when Chief Judge Jacobs formulated the *Chateaugay* mootness presumption, he relied on Supreme Court and Ninth Circuit precedent. (Motion, 12.) Moreover, the mootness presumption roots itself in Congressional enactment, 11 U.S.C. § 1101(2), rather than case law, making it a structurally sound rule in any event.

### 3. *AlphaMed Fails to Explain How This Court Can Fashion Effective Relief*

In support of its mootness Motion, Arriva offered extensive testimony in declarations of its activities since the Effective Date. This evidence showed Arriva has substantially consummated its Plan, causing a comprehensive change of circumstances that renders AlphaMed's appeal equitably and constitutionally moot. In its Opposition, AlphaMed makes the conclusory assertion that this Court could fashion effective relief, yet utterly fails to show, as a matter of fact, *how* this Court could do so. Indeed, AlphaMed did not file even one declaration to support its conclusory assertion the Bankruptcy Court could render effective relief.

AlphaMed offers the conclusory assertion that "[t]his is not a complex, billion-dollar affair that has affected 'innumerable' third parties." (Opposition, 17.) In fact, this bankruptcy is complex. Indeed, it is far more complex than the *Sylmar*, *Weinstein* and *Baker & Drake* cases on which AlphaMed relies in the Opposition, and which Arriva distinguishes, *infra*. Also, contrary to AlphaMed's suggestion, this case does involve numerous parties, including more than forty third parties who have performed under contracts since the Effective Date three months ago.[1] True, Arriva's bankruptcy case was not a "billion-dollar affair." But no case in the Ninth Circuit or elsewhere holds that the mootness doctrine only applies to Fortune 500 companies. It is, instead, a rule that protects the debtor, creditors and other third parties in any bankruptcy where (as here) the appellant cannot obtain effective relief.

Further stretching the facts, AlphaMed attempts to minimize MPM's and Nordic's reliance on the integrity of Arriva's Plan, suggesting they are not third parties "unaware" that AlphaMed objected to the Plan. (See Opposition, 16.) In so doing, AlphaMed ignores that Nordic was not a shareholder of Arriva until *after* Arriva brought its Plan effective. Nordic was a third party investor that had no relationship to Arriva when Arriva filed for bankruptcy. Nordic invested in Arriva after its bankruptcy filing and relied on the Bankruptcy Court's order in making its loan to Arriva. AlphaMed additionally disregards that insiders are entitled to rely on a Bankruptcy Court's final unstayed order confirming a plan of reorganization. In this respect, while MPM and Nordic may have known AlphaMed objected to some aspects of the Plan, they also certainly knew AlphaMed did not obtain a stay of the Plan Confirmation Order, and that Arriva was free—indeed, obligated—to move forward with its reorganization.

The declarations filed with the mootness Motion make clear Arriva has undertaken a number of activities since the Effective Date more than three months ago. Indeed, even in

---

[1] Also contrary to AlphaMed's suggestions, Arriva does not "totally obscure[]" the amount of its distributions to date. In fact, in Exhibit N to the Preston Declaration in Support of the Motion, Arriva details its distributions to the penny.

-5-

the three weeks since it filed its Motion, Arriva has undertaken still more activities that render AlphaMed's appeal moot. Accordingly, Arriva now submits further declarations[2] in support of this Reply to demonstrate that creditors, insiders, lenders, and innocent third parties have relied on Arriva's emergence from Chapter 11. Without repeating all the activities set forth on pages 7-9 of the Motion, and as set forth in the declarations in support of the Motion and this Reply, Arriva submits that on and after February 13, 2008:

1. Arriva drew down on its $6 million line of credit provided by its lenders, Nordic and MPM. This take-out financing was funded in reliance on the Plan being confirmed and there being no stay of the Plan's effectiveness. Arriva has no funds or line of credit to repay this take-out financing were this Court to reverse the Plan Confirmation Order.

2. Arriva has paid approximately $5 million to more than 80 different parties, as set forth in the Declaration of M. Sue Preston in Support of the Reply (the "Preston Reply Declaration"), ¶ 4 & Exhibit B. These parties are spread all over the world, and it would be difficult or impossible to retrieve the funds paid to them. Nor is there any legal reason to retrieve those funds when those parties have provided valid services and products in consideration for such payments.

3. Arriva and QSV have performed under a contract whereby QSV manufactures and provides clinical rAAT to Arriva. Arriva has paid QSV $1,209,306.08 since February 13, 2008. QSV, located in Canada, has geared up for performance under this contract, and will continue to perform in the future. These funds are difficult or impossible to retrieve. Indeed, any attempt to retrieve them would injure QSV, making a waste of its new hires and costs incurred to perform under its contract with Arriva.

---

[2] Courts routinely accept further evidence of mootness in the context of bankruptcy. For example, in *In re Roberts Farms*, 652 F.2d at 796 & 799-803, the Ninth Circuit adopted by reference debtor's counsel's 28(j) letter in an appendix, which letter updated the court on new events that had occurred up to time of the Ninth Circuit argument.

-6-

    4.     Arriva has been invited by a Board that oversees international patient registries to present its clinical results and future plans. Members of this Board have allocated valuable human resources to considering Arriva's program as the way to solve treatment of hereditary emphysema. If Arriva cannot continue its operations as it emerges from Chapter 11, this will have an adverse impact on the many hereditary emphysema patients diagnosed with a fatal disease for whom no therapy is currently available.

    5.     Arriva has assumed over forty contracts that it did not have to assume. When a Bankruptcy Court confirms a plan of reorganization, the Debtor either assumes or rejects (breaches) its pre-bankruptcy contracts. Since the Plan became effective, Arriva assumed and agreed to perform under these contracts. Third parties to these forty contracts have relied on this performance since February 13th, and no party's performance under these contracts can be undone. (Exhibit A to the Preston Reply Declaration.)

    6.     Arriva has cancelled all the stock of its old shareholders, owned by more than 65 different individuals and entities, and issued new common and preferred stock.

    7.     Arriva settled claims with twelve companies and individuals, relying on the Effective Date, which claims totaled more than $31 million. In settling their claims, these parties relied on the integrity of Arriva's reorganization.

With each passing day, Arriva's activities cause its reorganization to become more deeply entrenched. Arriva now has no money to repay the loans, and no money to pay the tens of millions of dollars in damages on its assumed contracts in the case that reversal of the Plan Confirmation Order effected a breach of those contracts. Indeed, reversal would implicate more than monetary harm. A board that oversees large international patient registries has put its faith in Arriva, committing human resources to it in the hope that it can facilitate a cure for hereditary emphysema. This Court cannot practicably tell this board, and the many patients whom it serves, that Arriva's Plan is "unconfirmed," that Arriva must be liquidated, and that a cure for this disease is suddenly more distant than it was yesterday.

-7-

Any remand order instructing the Bankruptcy Court to unscramble the eggs of this reorganization would not result in "relief" at all, but would merely create an "unmanageable, uncontrollable situation for the Bankruptcy Court." *In re Roberts Farms, Inc.*, 652 F.2d at 797.

### 4.   *AlphaMed's Own Cases Demonstrate AlphaMed's Appeal Is Moot*

The cases on which AlphaMed relies provide an excellent study in contrast. Each one demonstrates why this Court must dismiss AlphaMed's appeal as moot.

For example, *In re Sylmar Plaza, L.P.*, 314 F.3d 1070 (9th Cir. 2002) was a *single-asset*, *two-party* bankruptcy involving a *solvent debtor*. In that case, Platinum appealed confirmation of Sylmar's plan of reorganization, claiming Sylmar owed it "default" interest. The Bankruptcy Appellate Panel affirmed the plan, and when Platinum appealed to the Ninth Circuit, Sylmar moved to dismiss the appeal as moot. The Ninth Circuit denied the motion. First, the court noted, Platinum's claim was "for monetary damages against solvent debtors." *Id*. at 1074. Second, the court noted there had not been a comprehensive change of circumstances. *Id*. Sylmar's plan was extremely simple, involving only two parties, a dispute solely about the amount of interest, a full payout of creditors, and no subsequent restructuring.

AlphaMed's misbegotten appeal is exactly the opposite of Platinum's. Arriva's bankruptcy was not a two-party single-asset case with a solvent debtor. To the contrary, Arriva's bankruptcy implicated hundreds of significant creditors and other interested parties, and an array of assets from stock and intellectual property to valuable proteins, equipment and cash. In addition, unlike Sylmar, Arriva was not a solvent debtor with extra cash on hand to pay aggrieved appellants. Rather, was an insolvent debtor with limited funds to satisfy its creditors—something AlphaMed well understands from its participation in the bankruptcy case.

But AlphaMed's discussion of *In re Sylmar Plaza, L.P.*, 314 F.3d at 1070 is even more telling for what it omits. On page 14 of the Response, AlphaMed sets forth a block quote, but scratches, via ellipsis, the most important part of that quote. In so doing,

-8-

1  AlphaMed severely misrepresents to this Court the holding of *Sylmar*. An accurate block
2  quote reads as follows:

> Even if [Sylmar's] plan has been substantially consummated, *because Platinum's claim is only for monetary damages against solvent debtors*, this is not a case in which it would be impossible to fashion effective relief.

6  *Id* (language omitted by AlphaMed in italics). Thus, *Sylmar*'s own holding distinguishes it
7  from the present case. AlphaMed's misleading quotations notwithstanding, Arriva's
8  underlying bankruptcy case, unlike *Sylmar*, involves hundreds of parties, creditors and
9  third parties whose rights have vested after the Effective Date of the Plan.

10  AlphaMed relies heavily on *In Re Weinstein*, 227 B.R. 284 (9th Cir. BAP 1998), in
11  which the Bankruptcy Appellate Panel (the "BAP") refused to dismiss an appeal as moot.
12  This case is not compelling for at least three reasons. First, a BAP decision is not binding
13  on this Court. Second, as in *Sylmar* the appeal in *Weinstein* reflected only a two-party
14  dispute, and relief was merely an issue of "Debtors being required to pay [a bank] more
15  money." *Id*. at 290. As a result, the BAP could easily have ordered effective relief on
16  remand. Again, Arriva's bankruptcy is exactly the opposite. Here, a reversal of the Plan
17  involves numerous creditors and innocent third parties, and millions of dollars' worth of
18  stock and payments spread among them. Third and finally, *Weinstein* spoke of mootness
19  only in dicta, as the BAP ultimately affirmed the bankruptcy court's decision, finding
20  appellant bank's arguments to lack merit. *Id*. at 297-98.

21  *In re Baker v. Drake*, 35 F.3d 1348 (9th Cir. 1994) is also distinguishable, and in fact
22  supports Arriva's position. In that case, Baker, the debtor-appellee taxicab company moved
23  to dismiss an appeal as moot. The Ninth Circuit denied its motion, but only because Baker
24  failed to "submit[] any information about the extent of their expenditure" following plan
25  confirmation. *Id*. at 1352. As a result, the court held, it lacked a factual basis for a
26  determination of mootness. Either way, the Ninth Circuit noted, appellants sought modest
27  relief: merely to change the taxicab drivers' legal status from "independent contractors" to
28  "employees," in order to bring the plan in line with Nevada law. At the same time, the

-9-

Ninth Circuit admonished that "[f]ailure to obtain a stay, standing alone, is often fatal," *id.* at 1351, thus suggesting a firmer evidentiary showing by Baker could have succeeded in dismissing the appeal as moot.

In this way, *Baker* only underlines the mootness of AlphaMed's appeal. Here, unlike Baker, Arriva has made a strong evidentiary showing of its expenses and other steps taken in the wake of Plan confirmation. Moreover, in contrast to *Baker*, reversal of the Plan Confirmation Order here would implicate far more than a minor change in legal status. Reversal here would require this Court to instruct the Bankruptcy Court to unravel a complex plan of reorganization, altering the relationships among a myriad of parties and unwinding millions of dollars of financial transactions and harming many innocent third parties. Such an order would not result in relief at all, but would only create an "unmanageable, uncontrollable situation for the Bankruptcy Court." *In re Roberts Farms, Inc.*, 652 F.2d at 797.

### B. AlphaMed's Appeal Is Meritless

As previously noted, the instant Motion concerns solely the issue of mootness—not the merits of AlphaMed's appeal of the Plan Confirmation Order. Nevertheless, AlphaMed sets forth two grounds for its appeal. We will therefore briefly outline here why this Court, if it were to reach the merits, likely would affirm the Plan Confirmation Order. Specifically, if it reaches the merits, this Court would affirm the Plan Confirmation Order because (1) the Bankruptcy Court did not err in its classification rulings, and (2) the Bankruptcy Court did not commit clear error in making its factual findings on feasibility.

#### 1. *The Bankruptcy Court Did Not Err in its Classification Rulings*

AlphaMed suggests the Bankruptcy Court erred by approving a separate class for "General Unsecured Claims" (Class 4), and "Lezdey Claims" (Class 5). (Opposition, 17-18.) According to AlphaMed, the Plan should have grouped these claims together in a single class because they are similar. Wrong. Because AlphaMed is a competitor to Arriva, it could leverage its vote as a tool in negotiations against the debtor. Such competitors are

1  properly classified as separate from the general unsecured creditors. *In re U.S. Truck Co.*, 800 F.2d 581 (6th Cir. 1986).

3  In any event, issues regarding classification of the Lezdey Claims are now moot, because the Bankruptcy Court entered an order disallowing those claims and estimating them at zero for voting purposes. If a party's claim is disallowed, then it may not vote to accept or reject a plan.[3] *In re M. Long Arabians*, 103 B.R. 211, 215 (9th Cir. BAP 1989); *In re Miami Trucolor Offset Serv. Co.*, 187 B.R. 767, 768 (Bankr. S.D. Fla. 1995); *cf.* 11 U.S.C. § 1126(a) ("holder of a claim *allowed* . . . may accept or reject a plan.") (emphasis added). Oftentimes, a creditor whose claim has been disallowed will vote provisionally in the hopes that her claim will be allowed on appeal. But here, AlphaMed did not bother to cast a provisional ballot. (Exhibit A to the Ahrens Declaration.) Because AlphaMed could not vote—and indeed because it *did not* vote—the issue of classification is moot. Indeed, Bankruptcy Judge Jellen ruled that the classification issue was moot, noting that he previously disallowed the claims and, in the alternative, estimated the claims at zero. (Exhibit B to the Ahrens Declaration, ¶ 3(a).)

16  Not only did it disallow AlphaMed's claims and estimate those claims at zero, the Bankruptcy Court also sustained Arriva's objection to the vote of John Lezdey, an officer of AlphaMed. Bankruptcy Judge Jellen found John Lezdey acted in bad faith by transferring certain patents in violation of the Arizona Court's injunction. (Exhibit C to the Ahrens Declaration, 70:7-14.) On this basis, the Bankruptcy Court disallowed the vote of an officer of AlphaMed, Mr. Lezdey. (Id.)

22  This Court would not likely vacate these factual findings. As a result, remand is futile: the votes would be the same, the plan would be approved, and the Bankruptcy Court in turn would confirm the plan for the very same reasons as it did previously.

---

[3] There is one exception to the § 1126(a) rule on creditor standing. Even if a party's claim is disallowed, that party still may vote if the court temporarily allows the claim for voting purposes. *See* Fed. R. Bankr. P. 3018(a). In this case, however, the Bankruptcy Court explicitly has estimated the claims of each of the Class 5 claimants at zero. In estimating such claims, a bankruptcy court "has broad discretion," *In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989), the exercise of which is reviewed on appeal fro abuse of discretion, *id.*

-11-

2.  **The Bankruptcy Court Did Not Commit Clear Error in Making Its Factual Findings on Feasibility**

AlphaMed suggests the Bankruptcy Court committed clear error in making its findings on the feasibility of the Plan. (Opposition, 18.) In support of this argument, first, AlphaMed suggests the Bankruptcy Court erred in finding the Eleventh Circuit appeal would not affect ownership of the Protease License. (Opposition, 19:2-4.) Second, AlphaMed suggests the Bankruptcy Court "reserved the right to revisit and modify its various rulings." (Opposition, 14.) These assertions are misleading. In the bankruptcy case, Arriva marshaled substantial direct testimony by M. Sue Preston and John Barberich in the form of declarations received into evidence. (Exhibit C to the Ahrens Declaration, 5-6.) AlphaMed cross-examined these witnesses (Exhibit C to the Ahrens Declaration, 37-67), and Bankruptcy Judge Jellen made his findings based on credible evidence. These findings should not be disturbed on appeal. This court likely would reject AlphaMed's arguments, and conclude the Bankruptcy Court did not commit clear error in finding Arriva's Plan to be feasible.

a.  *Standard of Review*

The question "whether a plan is feasible—is not likely to be followed by liquidation or further reorganization—is one of fact . . . review[ed] under the clearly erroneous standard." *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir. 1985). Thus, this Court can vacate the Bankruptcy Court's feasibility determination only if, upon reviewing all the evidence, it "is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) (quoting *United States v United States Gypsum Co.*, 333 U.S. 364 (1948).)

b.  *The Eleventh Circuit Appeal Will Not Affect Ownership of the Protease License*

AlphaMed states the Eleventh Circuit could affect ownership of the Protease License, thus "undermin[ing]" Arriva's business. (Opposition, 19:2-4.) On this basis, AlphaMed suggests the Plan is not feasible. This is incorrect. Bankruptcy Judge Jellen found that the

-12-

proceeding in the Florida District Court concerned only three issues: (1) misappropriation of trade secrets; (2) tortious interference; and (3) common law unfair competition. *AlphaMed Pharms. Corp. v. Arriva Pharms. Inc.*, 432 F. Supp. 2d 1319, 1329 (S.D. Fla. 2006). Parsing the Florida Court's proceedings, Bankruptcy Judge Jellen found:

> To the extent the objection is based on the allegation that reversal on appeal will undermine the debtor's "entire business," the record in the litigation between the parties concludes to the contrary. . . . [T]he [Florida Court] struck AlphaMed's claim for declaratory relief in that action regarding the debtor's license.

(Exhibit B to the Ahrens Declaration, ¶ 3(e)(1)(B).) Further, Bankruptcy Judge Jellen found the finding of the Florida District Court jury was vacated by the District Judge Altonaga:

> As far as the prospects of the Debtor losing its license, the Protease [L]icense, I have taken into account the status of the litigation. I am aware of the fact that the jury, in dealing with damages, made a finding, but that finding has been vacated. Right now, the operative finding is [the finding of] the Arizona Court that the license is valid.

(Exhibit C to the Ahrens Declaration, 72:3-8.) In fact, this Court, sitting as trial court in *Arriva Pharms., Inc. v. Sonoran Desert Chemicals, LLC*, 99-02169-SI, made the same finding. As noted in the Motion, District Judge Illston held: "[T]he [Protease License] issue has already been extensively litigated in the Arizona court. . . . The license's validity was a specific finding in the court's final judgment . . . ." (Exhibit H to the Barr Declaration in Support of Motion to Dismiss as Moot, 7 et seq.; Motion, 4-5).

These findings demonstrate the appeal to the Eleventh Circuit does not involve ownership of the Protease License. Thus, Bankruptcy Judge Jellen's finding that the Eleventh Circuit's decision would not affect ownership of the Protease License, is not clearly erroneous.

    c. *The Bankruptcy Court's Finding that the Reserve Protects AlphaMed Is Not Clearly Erroneous*

AlphaMed states the Bankruptcy Court "reserved the right to revisit and modify its various rulings." (Opposition, 14.) In so saying, however, the Bankruptcy Court simply reserved the right to change its valuation of AlphaMed's claim. Because Arriva's plan is a

-13-

"pot plan," such a modification could only affect AlphaMed's recovery from the pot of reserves established by the provisions of the Plan.

Arriva's Plan is a "pot plan," and provides a mechanism by which AlphaMed would recover a larger share of the "pot" if it prevails on appeal in the Eleventh Circuit. If AlphaMed prevails in the Eleventh Circuit, then Arriva will pay out to AlphaMed a proportionally larger share of the funds reserved under the Plan, and other creditors will receive proportionally less. If AlphaMed does not prevail in the Eleventh Circuit, it will not receive such a share of the payout from the reserve funds.[4]

This contingent distribution mechanism is by no means unusual. Indeed, the Ninth Circuit has endorsed such plan provisions as feasible as a matter of law. For example, in *Sherman v. Harbin (In re Harbin)*, 486 F.3d 510 (9th Cir. 2007), an appeal of a lawsuit against the debtor remained pending in another court at the time of plan confirmation. The Ninth Circuit held that the bankruptcy court merely need evaluate "the likelihood of . . . success on appeal and the impact of such potential success on the feasibility of [the debtor's] plan." *Id.* at 520. If a bankruptcy court makes this evaluation, and finds the plan feasible, then no error has occurred.

In this case, the Bankruptcy Court made the following finding which is supported by the record and would not be disturbed even if this Court were to hear an appeal:

> [S]hould AlphaMed prevail on appeal, the plan requires . . . a reserve [of funds]. . . . Such a reserve, then, will enable the debtor to perform its obligation to Class 5 [Lezdey Claims] in the event of a successful appeal [by AlphaMed].

(Exhibit B to the Ahrens Declaration, ¶ 3(e)(1)(A).) In the course of this finding, Bankruptcy Judge Jellen cited *In re Harbin*, 486 F.3d at 510, and found that a successful appeal in the Eleventh Circuit would result in a higher recovery from the pot of reserve funds to AlphaMed. (Exhibit C to the Ahrens Declaration, 71:17 et seq.) Bankruptcy Judge

---

[4] This mechanism is discussed at length in Arriva's Disclosure Statement. (See Exhibit B to the Preston Declaration in Support of the Motion to Dismiss, 2 & 33 et seq.)

Jellen considered *Harbin* in his findings, and considered the potential of the Eleventh Circuit appeal in finding the Plan was feasible.

At the Confirmation hearing, attorneys for AlphaMed tested the feasibility of Arriva's Plan, cross-examining M. Sue Preston and John Barberich, the President of Arriva and Financial Advisor to Nordic, respectively. Bankruptcy Judge Jellen tested the credibility of both these live witnesses. It is therefore likely that if this Court were to consider the merits of AlphaMed's appeal, it would not find Bankruptcy Judge Jellen committed clear error, and would affirm the Plan Confirmation Order.

### III. CONCLUSION

This Court must dismiss AlphaMed's appeal of the Plan Confirmation Order as moot.

DATED: May 9, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
MICHAEL H. AHRENS

Attorneys for
ARRIVA PHARMACEUTICALS, INC.